# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **FRANCESCO PARTIPILO,** | ) |
| | ) |
| Plaintiff, | ) No. 16 C 9739 |
| | ) |
| v. | ) Magistrate Judge M. David Weisman |
| | ) |
| **NANCY A. BERRYHILL, Acting** | ) |
| **Commissioner of Social Security,**[1] | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Francesco Partipilo brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Social Security Administration Commissioner's decision that his self-employment earnings for the years 1993 and 1994 should not be included in his earnings record and that his benefits are subject to the windfall elimination provision. For the reasons set forth below, the Court reverses the Commissioner's decision.

## Background

Plaintiff was born in Italy in 1936 and worked there until 1990. (R. 257-58.) During his time working in Italy, plaintiff contributed to the Italian social security system, the Instituto National Prevadanza Sociale ("INPS"). (R. 260.) Plaintiff's last contribution to the INPS was made in June 1990, and he began receiving monthly payments from INPS in July 2001. (R. 260-61.)

---

[1] On January 23, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security. *See* https://www.ssa.gov/agency/commissioner.html (last visited Nov. 10, 2017). Accordingly, the Court substitutes Berryhill for Carolyn Colvin pursuant to Federal Rule of Civil Procedure 25(d).

In 1993, plaintiff moved to the United States. In 1993 and 1994, he was self-employed and had adjusted gross income of $2,904.00 and $3,949.00, respectively. (*See* R. 145-49, 153-57.) "An individual who is self-employed must file a personal income tax return Form 1040 with a Schedule SE (self-employment) and a Schedule C (business profits and loss statement), and pay his own social security taxes" to establish self-employment income for Social Security purposes. *Chapman v. Apfel*, 236 F.3d 480, 482 (9th Cir. 2000); *see Social Security Program Operations Manual System* ("POMS") RS 01801.011 ("IRS transmits SEI [self-employment income] earnings information to SSA on magnetic media for crediting/posting to SSA's earnings records (E/Rs)."), *available at*, https://secure.ssa.gov/apps10/poms.nsf/lnx/0301801011 (last visited Nov. 27, 2017); POMS RS 01804.150 ("Credit cannot be given for unposted SEI [self-employment income] for a prelag year ["lag" is the year of application filing and the preceding year] unless a tax return . . . was 'timely filed.'"), *available at*, https://secure.ssa.gov/apps10/poms.nsf/lnx/0301804150 (last visited Nov. 27, 2017). The time limit for filing those tax returns is three years, three months and fifteen days after the year in which the income was earned. 42 U.S.C. § 405(c)(1)(B); 20 C.F.R. § 404.802; POMS RS 01801.010 ("A SE [self employment] tax return is 'timely filed' for SSA purposes if it is filed within SSA's statute of limitations; *i.e.*, 3 years, 3 months and 15 days after the close of the taxable year in which the SEI [self-employment income] is derived."), *available at*, https://secure.ssa.gov/apps10/poms.nsf/lnx/0301801010 (last visited Nov. 27, 2017). If a claimant does not file a self-employment tax return within the statutory period, that omission is, with certain exceptions not applicable here, "conclusive evidence that [the claimant] did not receive self-employment income in that year." 20 C.F.R. §§ 404.803(c)(3).

Plaintiff did not file his 1993 and 1994 tax returns until 2001, years after the statutory time limit had passed, and he does not contend that an exception to the conclusive evidence rule applies. (*See* R. 145-49, 153-57.) Nonetheless, in November 2002, the Commissioner credited plaintiff's earnings record with the self-employment income he belatedly reported for 1993 and 1994. (*See* R. 108.)

In June 2007, plaintiff applied for retirement/old age Social Security benefits. (R. 95-98.) In October 2007, the Commissioner awarded plaintiff monthly benefits of $416.00. (R. 158-60.) Plaintiff appealed the award, arguing that the calculations of earnings and benefits were wrong, the deductions from monthly benefits were wrong, and monthly benefits should have begun three years earlier. (R. 161.)

In February 2009, the Commissioner denied plaintiff's appeal saying, among other things, that there was "a substantial question as to whether there was any proper basis for giving [him] credit for 1993 and 1994 self-employment," and the earnings would be deleted if plaintiff could not establish that they had been validly reported. (R. 164.)

In September 2009, the Commissioner told plaintiff that "self-employment income previously erroneously put on your record of earnings covered by U.S. Social Security for 1993 and 1994 has been removed." (R. 167.)

In October 2009, plaintiff appealed arguing, among other things, that self-employment income had been reported to the IRS for 1993 and 1994. (R. 56.)

In February 2011, an Administrative Law Judge ("ALJ") held a hearing on plaintiff's appeal and issued a decision finding that the 1993 and 1994 self-employment income should have been included in plaintiff's earnings record. (R. 248-49.)

3

On April 21, 2011, the Commissioner's Reconsideration Review Section sent a letter to the Office of Appeals Operations directing it to vacate the ALJ's decision as there was no evidence that plaintiff had "filed any U.S. tax return for 1993 or 1994 within the respective statutes of limitations for those two years." (R. 33.)

On November 9, 2011, the Appeals Council found that plaintiff's 1993 and 1994 self-employment income had been erroneously added to his earnings record in 2002. (R. 69-71.)

Plaintiff appealed that decision to this Court, which remanded it to the agency for further proceedings pursuant to the parties' stipulation. (R. 427.) The Appeals Council, in turn, remanded the case to the ALJ, directing him to:

> . . . [M]ake findings and decide the date [plaintiff] became entitled to retirement insurance benefits and whether [plaintiff's] self-employment earnings for 1993-1994 are creditable to his earnings record. The [ALJ] will also make findings and decide whether the Administration has correctly reduced [plaintiff's] . . . benefits on account of his separate pension based on non-covered earnings. To that end, the [ALJ] will provide [plaintiff] with a thorough explanation of the formula used to compute his . . . benefits and how the Agency has calculated the primary insurance amount with and without the application of the windfall elimination provision and/or any totalization agreement. . . .

(R. 330.)

The ALJ held a hearing on April 29, 2015 (R. 683-721), and on May 2015, he issued a decision finding that the 1993 and 1994 self-employment income should not be included in plaintiff's earnings record and that the windfall elimination provision ("WEP") was applicable to his benefit determination. (R. 291-96.) The Appeals Council denied plaintiff's request for review of that decision (R. 267-70), leaving the ALJ's 2015 decision as the final decision of the Commissioner, reviewable by this Court pursuant to 42 U.S.C. § 405(g). *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

**Discussion**

The Court reviews an ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although this standard is generous, it is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

The Commissioner has three years, three months and fifteen days ("the time limit") to change a wage earner's earnings record for any year. 42 U.S.C. § 405(c)(5)(C); 20 C.F.R. § 404.803(c). After the time limit expires, the Commissioner can change an earnings record only if the "SSA records are incorrect" and, as relevant here, the "[e]rror is apparent on [the] face of [the] records," *i.e.*, "[it] can be identified and corrected without going beyond any of the pertinent SSA records." 42 U.S.C. § 405(c)(5)(C); 20 C.F.R. § 404.822(a), (e)(2). Plaintiff contends that the Commissioner's removal of his 1993 and 1994 earnings from his earnings record, which occurred after the time limit, does not fall into the "apparent error" exception because: (1) there was no error; and (2) even if there were an error, it was not apparent on the face of the agency's records.

Plaintiff's first argument is premised on the notion that there is an "error" in an earnings record only if the earnings were, in fact, not earned. (*See* Pl.'s Mem. Mot. Summ. J., ECF 35 at 10.) Plaintiff does not, however, cite any authority for this proposition, and the Court declines to adopt it.

In support of his second argument, plaintiff cites *Adorno Ortiz v. Secretary of Health & Human Services*, No. CIV 87-983 (JP), 1989 WL 57153 (D.P.R. May 16, 1989). In that case, the

agency credited plaintiff for his 1976 earnings, though plaintiff's tax return for that year had been filed seven days after the time limit expired. 1989 WL 57153, at *1. When plaintiff filed for benefits, the agency determined that the 1976 earnings would be excluded pursuant to the apparent exception because "the income [had been] erroneously credited" to his earnings record. *Id.* The court reversed the agency's decision:

> The statute requires, however, that the error be apparent on the face of the records being corrected. An error is not apparent on the face of a record if it is only apparent when another document must be consulted to find it. The Secretary's own regulations recognize this in 20 C.F.R. § 404.822(e)(2), which interprets the statute to mean "We may correct an earnings record to correct errors, such as mechanical or clerical errors, which can be identified and corrected without going beyond any of the pertinent SSA records." A tax return is not "the pertinent SSA records," and is not the "such records" upon the face of which the statute requires the error to be apparent, *see White v. Celebrezze*, 226 F. Supp. 584, 587 (E.D. Va. 1963), and the Secretary's "correcting" his earlier error of including the 1976 income by calling it an error apparent on the face of the record only serves to commit another error.

*Id.*

The *Adorno Ortiz* court did not, however, explain why tax returns, which a claimant must file with the agency to establish income from self-employment, *Chapman*, 236 F.3d at 482; POMS RS 01804.150 ("Credit cannot be given for unposted SEI for a prelag year [all years other than the one in which the application was filed and the year preceding it] unless a tax return . . . was 'timely filed.'"), *available at*, https://secure.ssa.gov/apps10/poms.nsf/lnx/0301804150 (last visited Nov. 27, 2017), are not agency records, and at least one other court, albeit without much analysis, has said that they are. *See Collins v. Astrue*, No. 4:12-cv-00071-TWP-DML, 2013 WL 4051033, at *4 (S.D. Ind. Aug. 8, 2013). Moreover, the agency's internal guidance strongly suggests that tax returns are agency records. *See* POMS RS 01804.50 ("Whenever development of SEI is required, pertinent portions of the claimant's tax returns are required. . . . The claimant's copy of the tax return is acceptable evidence of SEI and should be filed in the claims

6

folder."), *available at*, https://secure.ssa.gov/apps10/poms.nsf/lnx/0301804050 (last visited Nov. 27, 2017); POMS RS 02201.001 ("In proceedings before the Secretary or any court SSA records are evidence of: a. the amounts of wages and SEI; b. the periods when the wages were paid and the SEI was derived; and c. the fact that the amounts reported are wages or SEI under the Act."), *available at*, https://secure.ssa.gov/apps10/poms.nsf/lnx/0302201001 (last visited Nov. 27, 2017); POMS RS 02201.012 ("An E/R [earnings record] may be corrected at any time if . . . [e]vidence of record, anywhere in SSA, clearly shows that the posting is erroneous."), *available at*, https://secure.ssa.gov/apps10/poms.nsf/lnx/0302201012 (last visited Nov. 27, 2017). Given the abundance of evidence in POMS that tax returns constitute records of the SSA, and absent binding or persuasive authority to the contrary, the Court holds that tax returns are SSA records.[2] Thus, the ALJ did not err in concluding that there was an error in plaintiff's earnings record, the improper crediting of his 1993 and 1994 self-employment income, which was apparent from the face of the agency's records.

Plaintiff also contends that the WEP was improperly applied to him, an argument for which some background is required. The agency determines the amount of retirement benefits a worker receives by calculating their primary insurance amount, which is based on a percentage of the worker's average indexed monthly earnings ("AIME"). *See* 42 U.S.C. § 415. The agency determines the AIME by adding the worker's highest 35 years of covered income (income taxed for U.S. Social Security) earned between the ages of 22 and 62 and dividing the total by 420. 42 U.S.C. § 415(b); 20 C.F.R. § 404.211(e). After the AIME is calculated, it is separated into three brackets at what are called bend points, and the worker receives a percentage of the AIME that

---

[2] Unlike plaintiff, the Court does not see a conflict between these provisions of POMS and the regulation defining "record" as "SSA's records of the amounts of wages paid to you and the amounts of self-employment income you received, the periods in which the wages were paid and the self-employment income was received, and the quarters of coverage which you earned based on these earnings." 20 C.F.R. § 404.802.

falls into each of the brackets: 90% of the AIME that falls into the first bracket, 32% of that which falls into the second bracket, and 15% of that which falls into the third. *See* 42 U.S.C. § 415(a)(1)(A). The bend points are designed so that "the percentage of career average earnings paid to lower-paid workers is greater than [that paid to] higher-paid workers." SSA, *Windfall Elimination Provision*, *available at*, https://www.ssa.gov/pubs/EN-05-10045.pdf (last visited Nov. 27, 2017).

The WEP "seeks to preserve the progressive nature of the Social Security system by ensuring that the formula the agency uses to calculate benefits does not advantage high-income workers who split their careers between covered and non-covered employment over those who paid Social Security taxes for their entire careers." *Hawrelak v. Colvin*, 667 F. App'x 161, 162 (7th Cir. 2016), *cert. denied sub nom. Hawrelak v. Berryhill*, 137 S. Ct. 2194 (2017), *reh'g denied*, No. 16-8614, 2017 WL 3342982 (U.S. Aug. 7, 2017). The WEP does this by "reduc[ing] the benefits received by certain individuals who also receive pensions for work that did not require them to pay social security taxes," including those "who receive benefits from a foreign government based on their work." *Id.* The WEP applies to a worker who "attains age 62 after 1985 . . . and who first becomes eligible after 1985 for a monthly periodic payment . . . which is based in whole or in part upon his or her [non-covered] earnings." 42 U.S.C. § 415(a)(7)(A). The record shows that plaintiff turned 62 in 1998 and began receiving his Italian pension, based on earnings in that country, in 2001. (R. 257, 260-61.) Thus, it was not error for the ALJ to apply the WEP to plaintiff's benefit calculation.

Plaintiff also challenges the method the ALJ used to apply the WEP to plaintiff's benefit amount. (*See* Pl.'s Mem. Supp. Mot. Summ. J., ECF 35 at 13-15.) Though the Appeals Council directed the ALJ to "provide [plaintiff] with a thorough explanation of the formula used to

8

compute his . . . benefits and how the Agency . . . calculated the primary insurance amount with and without the application of the windfall elimination provision" (R. 330), the ALJ failed to do so. (*See* R. 291-96.) Absent that explanation, the Court cannot determine whether the ALJ properly calculated plaintiff's benefit amount. Accordingly, the case must be remanded for the ALJ to provide the required benefit computations. *Villano*, 556 F.3d at 562 ("If the Commissioner's decision lacks adequate discussion of the issues, it will be remanded.")

**Conclusion**

For the reasons set forth above, the Court grants plaintiff's motion for summary judgment [34], denies the Commissioner's motion for summary judgment [47], and remands this case for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**  **ENTERED: March 7, 2018**

_____
**M. David Weisman**
**United States Magistrate Judge**